UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) Plaintiff, ) ) v. ) ) CHRISTOPHER D. SARIDAKIS and JULES GARDNER, ) ) Defendants. ) | Civil Action No. _____ COMPLAINT |

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

## SUMMARY OF THE ACTION

1. This case involves unlawful insider trading in the common stock of GSI Commerce, Inc. ("GSIC"), a Pennsylvania-based e-commerce company, in advance of the company's March 28, 2011 public announcement of its merger with eBay, Inc. ("eBay"), by a GSIC executive, Christopher D. Saridakis ("Saridakis") and his longtime friend, Jules Gardner ("Gardner") (collectively, the "Defendants"). Saridakis tipped Gardner and another friend, Suken Shah ("Shah"), in addition to certain family members about the acquisition of GSIC. On the day of the announcement, the closing price of GSIC stock increased more than 50 percent.

2. Saridakis was an executive of GSIC and, as such, received confidential information concerning eBay's acquisition of GSIC. In breach of his fiduciary duty to

GSIC and its shareholders, Saridakis suggested that his friend, Gardner, "should" "own" GSIC shares "soon."

3. Based on Saridakis's tip, Gardner purchased 25,000 shares of GSIC stock in the week prior to the announcement. Gardner also tipped two friends who also purchased GSIC securities prior to the announcement. Following the announcement, Gardner's GSIC stock increased in value by over $250,000.

4. Saridakis also tipped another friend, Shah, about the acquisition of GSIC in the weeks leading up to the announcement. Shah purchased 1,000 GSIC shares based on Saridakis's tip and sold those shares on the day of the announcement for a profit of $9,838.

5. Certain of Saridakis's family members also purchased GSIC shares based on conversations they had with Saridakis in the weeks prior to the announcement. These family members sold their GSIC shares following the announcement and profited $41,060.

6. Following the announcement, the Financial Industry Regulatory Authority ("FINRA") requested information from eBay and GSIC regarding trading by certain individuals, including, but not limited to, Saridakis's friends and family members. Saridakis failed to identify Shah as someone he knew.

7. By knowingly or recklessly engaging in the conduct described in this Complaint, Defendants both violated, and, unless enjoined and restrained, will continue to violate Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

8. The Commission brings this action pursuant to Section 21(d) of the Exchange Act [15 U.S.C. §§ 78u(d)] to restrain and enjoin Defendants permanently from engaging in the transactions, acts, practices and courses of business alleged in this Complaint. The Commission also seeks a judgment (i) requiring Saridakis to disgorge the trading profits that his family members obtained through their unlawful purchases of GSIC stock, plus prejudgment interest thereon; (ii) imposing a civil money penalty pursuant to Section 21A(a) of the Exchange Act [15 U.S.C. § 78u-1(a)], on Saridakis; (iii) barring Saridakis from acting as an officer or director of a public company pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. §78u(d)(2)]; and (iv) requiring Gardner to disgorge the trading profits from his unlawful trading in GSIC stock.

9. The Court has jurisdiction over this action under Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1 & 78aa]. Defendants, directly or indirectly, singly or in concert, made use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

10. Venue in this District is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Among other things, certain of the acts, practices and courses of business constituting the violations of the federal securities laws alleged herein occurred within the Eastern District of Pennsylvania and Gardner resides in the Eastern District of Pennsylvania.

## DEFENDANTS

11. **Christopher D. Saridakis**, age 45, resides in Greenville, Delaware. During the relevant time, Saridakis was the Chief Executive Officer of the Marketing Solutions division of GSIC. Following the acquisition of GSIC by eBay, Saridakis became a Senior Vice President at eBay and President, eBay Enterprise (formerly GSIC), but has since resigned from eBay.

12. **Jules Gardner**, age 53, resides in Villanova, Pennsylvania. He is a long-time friend of Saridakis. Gardner founded PointRoll, Inc., a mobile marketing company, where he worked with Saridakis, and then sold the company in 2005. Gardner is currently retired. He served on the board of JagTag Inc., a private company in the mobile marketing industry.

## RELATED PERSONS AND ENTITIES

13. **Suken Shah** resides in the State of Delaware. At all relevant times, Shah was employed as a surgeon in the State of Delaware.

14. **Individual B**, referred to herein, resides in the Commonwealth of Pennsylvania. At all relevant times, Individual B owned and operated a family office in the Commonwealth of Pennsylvania.

15. **Individual C**, referred to herein, resides in the State of New Jersey. At all relevant times, Individual C was employed at Individual B's family office in the Commonwealth of Pennsylvania.

16. **GSI Commerce, Inc.** was, during the relevant time period, an e-commerce company headquartered in King of Prussia, PA. Its common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act [15

4

U.S.C. § 78l(b)] until after it was acquired by eBay. GSIC's common stock traded on the NASDAQ (former ticker symbol GSIC) and options on GSIC's stock traded on multiple U.S. options exchanges.

17. **eBay, Inc.** is a Delaware corporation based in San Jose, California. The company specializes in global commerce and payment platforms. eBay acquired GSIC pursuant to a merger agreement that was publicly announced on March 28, 2011 and closed in June 2011. GSIC now operates as a wholly-owned subsidiary of eBay under the new name, eBay Enterprise.

## FACTS

### A. The Acquisition Negotiations

18. By January 30, 2011, representatives of GSIC and eBay began discussing a potential acquisition of GSIC by eBay. Discussions continued on January 31, 2011 and from February 2011 through March 2011, GSIC and eBay executives conducted confidential and nonpublic negotiations with regard to the potential acquisition, including entering into confidentiality agreements, conducting due diligence, and negotiating the GSIC per share purchase price.

19. As early as mid-February 2011, Saridakis was aware of the negotiations between GSIC and eBay as part of his official duties as CEO of the Marketing Solutions division of GSIC. Saridakis's involvement increased when he participated in a meeting between eBay and GSIC executives on March 11, 2011.

20. Saridakis understood that any information concerning the potential acquisition was confidential and that GSIC took steps to ensure the deal remained secret. For example, Saridakis used the specified codename in his calendar to describe the March

11, 2011 meeting with eBay and GSIC secured the top floor of its headquarters so the executives could meet privately.

21.     Negotiations culminated in the execution of a final agreement for eBay to acquire GSIC in the early morning of March 28, 2011.

22.     NASDAQ halted trading in GSI shares at 9:22 a.m. that morning based on pending news. At 10:05AM on March 28, 2011, eBay and GSIC issued a joint press release. The press release announced that the companies had entered into a definitive merger agreement whereby eBay would acquire GSIC for $29.25 per share, or a total consideration of approximately $2.4 billion. Before the public announcement, the merger discussions between the two companies were confidential and nonpublic, and neither company had announced any ongoing negotiations or potential acquisition or merger.

23.     The market reacted significantly to the news. GSIC's stock price rose $9.82 per share following the announcement to close at $29.20 per share that day (a rise of more than 50% over the prior trading day's closing price of $19.38). Trading volume on the day of the announcement was 42.6 million shares, compared to GSIC's historical average daily volume of approximately 1.1 million shares.

24.     The merger closed on June 17, 2011 with current shareholders receiving $29.25 per share of GSIC common stock plus an additional $0.33 per share of GSIC common stock as part of a shareholder litigation settlement for a total of $29.58 per share.

**B.     Saridakis Breached his Fiduciary Duty**

25.     As detailed below, Saridakis tipped his friends and family resulting in their purchase of GSIC securities prior to the March 28, 2011 announcement. As an executive of GSIC, Saridakis owed a fiduciary duty to GSIC and its shareholders to keep

6

confidential any material nonpublic information about the company. Moreover, as an employee of GSIC, Saridakis was subject to GSIC's insider trading policy, which expressly prohibited employees from trading when in the possession of material nonpublic information or disclosing material nonpublic information to others. Saridakis breached his fiduciary duty to GSIC and its shareholders by disclosing or by making recommendations based upon material non-public information about GSIC to Gardner, Shah, and certain of Saridakis's family members with the awareness that they could trade GSIC securities based on that information. Saridakis benefitted from his tips by conferring a gift of confidential information on his friends and family members.

### C. Saridakis Tips Gardner

26. Saridakis and Gardner have been friends since 2003 when Saridakis was hired as COO of PointRoll, Inc. ("PointRoll"), a company Gardner had founded. Even after their time together at PointRoll, Saridakis and Gardner remained friends and continued to pursue business ventures together as late as 2012. During the relevant time period, Gardner knew Saridakis was a high level executive at GSIC with access to confidential information. They called each other about once a month and exchanged text messages on a weekly basis between February and April 2011.

27. Starting at 10:53 P.M. ET on Sunday, March 20, 2011, Saridakis and Gardner exchanged 23 text messages including the following exchange, which referred to shares in GSIC in which Saridakis made a recommendation to purchase GSIC stock based upon the material non-public information that Saridakis had learned:

```
SARIDAKIS:  do you own our shares?
GARDNER:    no, but it's cheap
SARIDAKIS:  you should
GARDNER:    ok
SARIDAKIS:  soon
GARDNER:    tomorrow AM under $20
SARIDAKIS:  exacly [sic]
```

**D.   Gardner Trades Based on Tip from Saridakis**

28. On March 22, 2011, Gardner placed an order for 25,000 GSIC shares in his account at Scottrade. Gardner purchased his 25,000 GSIC shares for $470,959.66 on the basis of the material nonpublic information he had received from Saridakis.

29. Prior to March 2011, Gardner had never purchased GSIC stock.

**E.   Saridakis Tips Suken Shah**

30. Saridakis met with eBay executives at GSIC headquarters on March 11, 2011. That same evening, Saridakis had a conversation with Shah and informed him of the proposed acquisition of GSIC.

31. Shah purchased 1,000 GSIC shares on the basis of the material nonpublic information about the proposed acquisition of GSIC communicated to him by Saridakis. Shah sold those shares on the day of the announcement for a profit of $9,838. Shah also went on to tip two other individuals who also profited from GSIC trades and tipped others.

### F. Certain Family Members Purchase GSIC Shares

32. Saridakis also had conversations with certain of his family members, after Saridakis had become aware of eBay's interest in acquiring GSIC, that caused those family members to purchase GSIC shares in the weeks leading up to the announcement. Those family members sold their GSIC shares following the announcement for a total profit of $41,060.

### G. Gardner Tips Individual B and Individual C

33. Gardner met Individual B in 2006. The two became close friends and were seeing each other almost every day by the first half of 2011. Gardner was a benefactor for Individual B's charities and the two also pursued business ventures together.

34. Individual B's assistant, Individual C, and Gardner were friends and would discuss investments and other business ventures from time to time.

35. Individual B and Individual C knew Gardner and Saridakis were friends and former business colleagues and that Saridakis was a high level executive at GSIC with access to confidential information.

36. After having received the material nonpublic information from Saridakis, Gardner shared that information about GSIC with Individual B and Individual C with the expectation that Individual B and Individual C would trade GSIC securities, and which did, in fact, cause them to trade GSIC securities as described below. Gardner benefitted from his tips by conferring a gift of confidential information on Individual B and Individual C.

37.     Indeed, it was immediately after speaking with Individual B for the second time on March 22, 2011 that Gardner placed his order to purchase his 25,000 GSIC shares.

38.     Shortly thereafter, and also on March 22, Individual B began purchasing GSIC shares. From March 22 – 25, Individual B purchased 37,000 GSIC shares for $704,680.50.

39.     On March 25, 2011, Individual C purchased GSIC July call options.

40.     Following the March 28, 2011 announcement, Gardner's 25,000 shares of GSIC stock rose in value by $259,054.34. Gardner did not sell his GSIC shares and instead received $739,500 in cash ($29.58 per share) on June 21, 2011 following the deal close.

41.     Individual B's and Individual C's GSIC securities rose in value by $375,855 and $6,320, respectively, following the announcement, and they both sold their GSIC securities in May 2011.

**H.     The FINRA Inquiry**

42.     In September 2011, FINRA contacted eBay to inquire about certain trading that had occurred prior to the March 28, 2011 announcement. In the course of the investigation, eBay and its representatives sought from Saridakis information about any individuals whose names had been identified by FINRA, including, but not limited to, Suken Shah. Saridakis failed to identify Shah as someone he knew.

## **CLAIM FOR RELIEF**

**FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

43. The Commission realleges and incorporates by reference ¶¶ 1 through 42, above.

44. The information concerning eBay's acquisition of GSIC was material and nonpublic. In addition, GSIC considered the information to be confidential.

45. At all times relevant to the complaint, Defendants acted knowingly or recklessly.

46. By engaging in the conduct described above, Defendants, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, with scienter:

   a. employed devices, schemes, or artifices to defraud;

   b. made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

   c. engaged in acts, practices, or courses of business which operate or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

47. By engaging in the foregoing conduct, Defendants violated, and, unless enjoined, will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that the Court enter Final Judgments:

**I.**

Permanently restraining and enjoining Defendants and their officers, agents, servants, employees, and attorneys, and those person in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

Ordering Saridakis to disgorge, with prejudgment interest, the illegal trading profits or ill-gotten gains received as a result of the trading of certain family members;

**III.**

Ordering Gardner to disgorge the unlawful trading profits received as a result of the conduct alleged in the Complaint;

**IV.**

Ordering Saridakis to pay a civil penalty under Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

**V.**

Prohibiting Saridakis from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15

U.S.C. § 78o(d)], pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2); and

### VII.

Granting such other and further relief as this Court may determine to be just and necessary.

Respectfully submitted,

/s/ David J. Gottesman

Scott W. Friestad
Jeffrey B. Finnell
David J. Gottesman
Jonathan Haray
Jessica L. Medina
Virginia Rosado Desilets

Attorneys for Plaintiff:

SECURITIES AND EXCHANGE COMMISSION
100 F. Street NE
Washington, DC  20549-4985
Telephone: (202) 551-4470

DATED: April 25, 2014